**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

**SURAJIT KUMAR CHATTERJEE,**

      **Plaintiff,**

**v.**                                     **Case No:  2:12-cv-572-FtM-38DNF**

**COMMISSIONER OF SOCIAL SECURITY,[1]**

      **Defendant.**

_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

      This cause is before the Court on Plaintiff's Complaint (Doc. 1) filed on October 18, 2012. Plaintiff, Surajit Kumar Chatterjee seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for Social Security Disability Insurance Benefits.  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions.  For the reasons set out herein, it is respectfully recommended that the decision of the Commissioner be **Reversed** and **Remanded** pursuant to §205(g) of the Social Security Act, 42 U.S.C. §405(g).

**I.  Social Security Act Eligibility, the ALJ Decision, and Standard of Review**

**A.  Eligibility**

---

[1]  Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Commissioner Michael J. Astrue as the Defendant in this suit. FED. R. CIV. P. 25(d).  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§416(i), 423(d)(1)(A), 1382a(3)(A); 20 C.F.R. §§404.1505, 416.905.  The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy.   42 U.S.C. §§423(d)(2), 1382a(3); 20 C.F.R. §§404.1505 - 404.1511, 416.905 - 416.911.  Plaintiff bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5  (1987).

### B.  Procedural History

On May 13, 2009, Plaintiff filed an application for Disability Insurance Benefits asserting a disability onset date of June 1, 2004. (Tr. 69–70).   These claims were denied initially on December 7, 2009, and denied upon reconsideration on March 15, 2010. (Tr. 46–48).  A video hearing was held before Administrative Law Judge Frederick McGrath on January 18, 2011. (Tr. 29-37). Plaintiff amended his onset date to January 18, 2008, at the hearing. (Tr. 32–33). The ALJ issued an unfavorable decision on February 24, 2011. (Tr. 8–17).  On August 16, 2012, the Appeals Council denied Plaintiff's request for review. (Tr. 1–4).   On October 18, 2012, Plaintiff filed a Complaint in the United States District Court for the Middle District of Florida. (Doc. 1). The instant action followed and the matter has been fully briefed and referred to the undersigned for issuance of a Report and Recommendation.

### C.  Summary of the ALJ's Decision

The ALJ found Plaintiff met the Social Security Act's insured status requirements through December 31, 2009. (Tr. 13).  At step one of the sequential evaluation process, the ALJ

found that Plaintiff had not engaged in substantial gainful activity from his alleged onset date of June 1, 2004,[2] through his date last insured. (Tr. 13). At step two, the ALJ found that Plaintiff suffered from the severe impairments of "degenerative disc disease of the lumbar spine and diabetes mellitus." (Tr. p. 13). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526). (Tr. p. 13). At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work; except that he is limited to occasional stooping, kneeling, crouching, crawling, and climbing latters and ropes. (Tr. 14). Plaintiff was also limited to avoiding concentrated extreme cold and vibration. (Tr. 14). At step four, the ALJ also found that Plaintiff is able to perform his past relevant work as an operation manager. (Tr. 16). The ALJ concluded that Plaintiff was not disabled as of June 1, 2004, through his date last insured, December 31, 2009. (Tr. p. 17).

### E.  Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla; i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67

---

[2] The ALJ listed Plaintiff's original onset date of June 1, 2004, in his opinion, although Plaintiff amended his onset date to January 18, 2008, at the Hearing before the ALJ.

F.3d 1553, 1560 (11th Cir. 1995), citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote,* 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### II. Review of Facts and Conclusions of Law

### A.  Background Facts

Plaintiff was born on October 1, 1954.  (Tr. 69). Plaintiff lives at home with his wife of over 30 years. (Tr. 69). Plaintiff stated in his Disability Report Form that he stopped working on June 1, 2006, because of back pain, and problems walking/standing. (Tr. 86). He stated that his disability limits his ability to work because he cannot walk, sit or stand for more than a few minutes at a time. (Tr. 86). Plaintiff listed his past relevant work as operation manager in a clothing business. (Tr. 86–87). His duties consisted of looking after shipments, imports and distribution. (Tr. 87). Plaintiff was required to lift up to fifty (50) pounds and frequently lift forty (40) pounds. (Tr. 87).

Plaintiff filled out a Supplemental Pain Questionnaire on June 10, 2009. (Tr. 92–94). Plaintiff described the pain as usually permeating through the entire back, but more painful in the lower back and ranging from quite severe to bearable. (Tr. 92). He stated the pain is constant, but

does change in degree with medication and physical therapy exercises. (Tr. 92). Plaintiff stated that pretty much any activity that exceeds 5-6 minutes begins to cause him discomfort. (Tr. 93). On his Disability Report-Appeal Form, Plaintiff stated that he was now experiencing numbness in his left foot which caused nerve pull while he sleeps causing pain and inability to sleep. (Tr. 104). He also stated that he requires assistance from his wife and daughter in order to care for his personal needs. (Tr. 107).

Plaintiff completed a second Supplemental Pain Questionnaire on February 11, 2010, describing the same intensity of pain. (Tr. 111–112).  A Supplemental Third Party Pain Questionnaire was completed on February 11, 2010, by Plaintiff's friend, Mr. Bhatt. (Tr. 116–118). Mr. Bhatt explained that Plaintiff's pain was so painful that he used to cry and lasted for a long time. (Tr. 116). Plaintiff completed a Work History Report on February 11, 2010. (Tr. 119–122). Plaintiff listed two positions: Operations Manager and Shipping Clerk. (Tr. 119). Contrary to his Disability Report Form, Plaintiff listed that the heaviest weight required to be lifted as an Operation Manager was twenty (20) pounds and frequently lifted less than ten (10) pounds. (Tr. 120).

Plaintiff testified that his medications cause occasional forgetfulness and bowel movement problems. (Tr. 35). Plaintiff also testified that although he had surgery in April of 2008 for his back pain, it has not relieved the problems. (Tr. 36).

**B. Summary of Medical Evidence**

Plaintiff's earliest medical record is dated January 11, 2008. (Tr. 212–214). On that date Plaintiff received a two-view image of his left hip which showed minimal early degenerative changes noted with discrete soft tissue calcification above the superior pelvic rim, increased sclerosis in the superior pelvic rim, and a small subchonadral cyst. (Tr. 212). Plaintiff also received

a Lumbosacral Spine Five View image which revealed a normal lumbar spine. (Tr. 213). Additionally a Renal Ultrasound was performed which revealed an anechoic 1.9 cm cyst at the mid-pole of the left kidney, but otherwise normal renal sonography. (Tr. 214).

On January 18, 2008, Plaintiff received an MRI of the Lumbar Spine at the request of Ramiah Krishnan, M.D. (Tr. 210). The MRI was performed by Radiology Regional Center without IV contrast. (Tr. 210). The imaging revealed considerable L4-5 disc protrusion with spinal stenosis. (Tr. 211). On April 13, 2008, Plaintiff was brought to Lee Memorial Health Systems Emergency Department by EMS with complaints of an exacerbation of his low back pain. (Tr. 160). It was noted that examination of Plaintiff's back showed some tenderness in the right low lumbar region with pain exacerbation with range of motion and straight leg raises. (Tr. 160). Plaintiff was advised to follow up with his pain management doctor. (Tr. 161).

Plaintiff underwent pre-op evaluation by Dr. Wesley H. Faunce of Lee Memorial Health Systems on April 18, 2008. (Tr. 158–59). Dr. Faunce noted that Plaintiff showed hypesthesia to pinprick in the calf of the left leg and ambulates with antalgic gait favoring the left leg. (Tr. 159). Additionally, it was noted that Plaintiff had a significant left extensor halluces longus weakness. (Tr. 159). Dr. Faunce discussed alternatives for relief of pain including conservative therapies, epidural steroid injections, and left L4-5 hemi-discectomy. (Tr. 159). Plaintiff was advised of the risks of surgery and discussed alternatives in detail but elected to have the procedure. (Tr. 159). On April 22, 2008, Dr. Faunce performed a left L4-5 Microendoscopic Discectomy with use of operative microscope and microsurgical technique, use of intraoperative fluoroscopy and intraoperative fluoroscopic interpretation. (Tr. 156).   The procedure was performed with no complications with findings of large disc herniation on the left L4-5. (Tr. 157).

Plaintiff visited with Dr. Faunce on May 5, 2008, for his initial post-op visit. (Tr. 155). It was noted that Plaintiff's pre-operative symptoms were resolved but complained of expected port-operative incisional discomfort. (Tr. 155). It was also noted that muscle strength was 5/5 throughout the lower extremities with the exception of trace weakness in his extensor halluces longus on the left compared to the right. (Tr. 155). Dr. Faunce noted that he was "pleased with the patient's progress at this time." (Tr. 155). Plaintiff presented to his Primary Care Physician, Dr. R. Krishnan on June 17, 2008. (Tr. 154). Dr. Krishnan noted that Plaintiff's leg pain was good but remained with stiffness in the back and low back pain. (Tr. 154). On September 29, 2008, Dr. Krishnan received an updated treatment plan from Apex Physical Therapy for an extension of Plaintiff's prescription. (Tr. 149, 287). It was noted that at that time Plaintiff's lower back pain was very minimal and he had attained all short term and long term goals. (Tr. 149, 287).

Plaintiff visited Dr. Krishnan's office on March 5, 2009, for a check-up. (Tr. 147, 285). Plaintiff was assessed to have right foot cellulitis and low back pain. (Tr. 147, 285). On March 11, 2009, returned for a follow up with Dr. Krishnan. (Tr. 146, 284). It was noted that Plaintiff's foot felt fine. (Tr. 146, 284). Plaintiff filled out a Patient Questionnaire with One on One Rehab on March 16, 2009. (Tr. 162–63, 189–90). At his initial examination Plaintiff was noted to be diagnosed with shoulder joint pain and post-laminectomy lumbar region. (Tr. 171–72, 203–04). It was also noted that Plaintiff had range of motion deficit for flexion, left lateral flexion, right lateral flexion, left rotation and right rotation. (Tr. 171). Plaintiff was recommended to have two visits per week for a total of 8 weeks. (Tr. 172).

Plaintiff presented for his first physical therapy session with One on One on March 18, 2009, with complaints of shoulder pain. (Tr. 173). It was noted that Plaintiff was able to perform exercise without pain. (Tr. 173). In his second visit on March 25, 2009, Plaintiff reported feeling

the same but was able to perform his exercises with minimum to no pain. (Tr. 174). On April 2, 2009, Plaintiff reported that his shoulder was feeling much better but his back was about the same. (Tr. 175). It was noted that he had increased ROM in his shoulder since the last evaluation. (Tr. 175). On April 8, 2009, Plaintiff reported feeling a little better but "still hurts a lot." (Tr. 176). Plaintiff was noted to have decreased MM guarding of the left shoulder and slow but steady progress toward goals. (Tr. 176).  Plaintiff presented to his next therapy sessions with complaints of constant lower back pain on April 15, 2009. (Tr. 177). It was noted that he was able to perform his exercises without pain. (Tr. 177).

On April 23, 2009, Plaintiff reported that his shoulder was better and it was noted that he required cues to recall his exercises. (Tr. 178). On April 29, 2009, it was reported that Plaintiff had no changes to lumbar ROM or subjective pain. (Tr. 179). Plaintiff reported finally feeling better on his May 6, 2009, therapy session. (Tr. 180). On May 13, 2009, Plaintiff reported feeling much better and was now able to sleep on two sides. (Tr. 181). On May 20, 2009, Plaintiff reported feeling so-so and stiff; it was also noted that Plaintiff was independent with exercise routine but had minimal response to physical therapy to date. (Tr. 182). The physical therapist recommended that Plaintiff consult with a spine specialist. (Tr. 182). On May 27, 2009, Plaintiff again reported feeling so-so and slow progress was noted. (Tr. 183).

Plaintiff visited with Dr. Krishnan on June 4, 2009, with complaints that he was unable to sit or stand for long and has low back muscle spasms. (Tr. 283). Plaintiff returned for his physical therapy session with One on One on June 5, 2009. (Tr. 202). It was noted that Plaintiff felt so-so and would benefit from adding more stabilization exercises. (Tr. 202). On June 11, 2009, Plaintiff visited Dr. Edward F. Figueroa with Non-Operative Spine, Pain and Neuromuscular Center. (Tr. 217). Plaintiff reported felling low back pain, low back muscle spasm, occasional left foot

numbness, left extension weakness, and occasional left extension pulling sensation/pain. (Tr. 217). Plaintiff was diagnosed with possible left shoulder impingement syndrome, possible myotomic strain, possible ligament sprain, or possible rotator cuff tear; and right ring finger stenosis tenosynovitis. (Tr. 220).

Plaintiff also attended a physical therapy session with One on One on June 11, 2009. (Tr. 201, 261). At this session Plaintiff complained of spasms in his left side when sitting and standing but his shoulder was feeling better. (Tr. 201, 261). On June 17, 2009, Plaintiff returned with 2–3/10 pain with mild tingling in lateral arm. (Tr. 199, 262). It was noted Plaintiff was unable to do sit-up exercise due to complaints of pain. (Tr. 199, 262). On June 24, 2009, Plaintiff presented for therapy session stating "I feel great" after manual therapy but felt soreness for three (3) days after last session. (Tr. 198, 263).

Plaintiff visited with Dr. Figueroa on July 2, 2009, for electrodiagnostic evaluation. (Tr. 221). It was noted that impressions were within normal range "except for regions of reduced insertional activity/reduced motor unit action potential activity and regions of normal insertional activity/normal unit action potential activity noted on needle electromyography of the bilateral lower lumbar paraspinal muscles consistent with residual from prior low back surgeries." (Tr. 221). Plaintiff stated that his low back was feeling better at his July 2, 2009, therapy session with One on One. (Tr. 197, 264). On July 8, 2009, Plaintiff reported feeling a lot of pain on the day prior to his therapy session and expressed great relief post prescription. (Tr. 196, 265).

On July 14, 2009, Dr. Figueroa performed a bilateral L4 and L5 posterior rami medial branch blocks (facet joint blocks) plus corticosteroid tender/trigger point injections on Plaintiff. (Tr. 208–9, 224–25). It was noted that Plaintiff tolerated the procedure well. (Tr. 209, 225).

Plaintiff attended a therapy session on July 15, 2009, reporting no changes in pain from the injections received the day prior but was able to tolerate the session well. (Tr. 195, 266).

On July 23, 2009, Plaintiff attended another physical therapy session with complaints of not being able to sleep, and severe pain in the lateral aspect of the left ankle and lower leg. (Tr. 194, 267). It was noted that Plaintiff had relief from the pain with physical therapy, but reported numbness in the same area where the pain was located. (Tr. 194, 267). Plaintiff saw Dr. Figueroa on July 23, 2009, with complaints of persisting pain and new pain in the left ankle. (Tr. 216). Plaintiff was instructed to obtain an MRI of the lumbar spine. (Tr. 216). At Plaintiff's final documented therapy session with One on One on July 29, 2009, he reported feeling much better. (Tr. 192, 268). It was noted that Plaintiff experienced good response to the last physical therapy session for relieving radicular pain. (Tr. 192, 268).

Plaintiff visited Radiology Regional Centers to obtain an MRI of lumbar spine with and without contrast per Dr. Figueroa's instruction on August 5, 2009. (Tr. 206–7, 226–27). Plaintiff was noted to have the following impressions:

> Status-post left-sided laminectomy with enhancing epidural scar tissue along the posterior and left lateral aspect of the thecal sac and surrounding the left L5 root as it exits the thecal sac. There has been interval resolution of the previously noted large disc protrusion. There is now a desiccated disc and disc bulge. There is mild bilateral neural foraminal narrowing. . . . L1-2 posterior and right paracentral disc protrusion abutting the right ventral thecal sac, unchanged from prior study. . . . [and] L5-S1 mild disc bulge.

(Tr. 207, 227). Plaintiff returned to Dr. Figueroa's office on August 18, 2009, with the same complaints as his previous visit. (Tr. 215). It was noted that epidural steroid injections were recommended as the plan and considering spine surgery evaluation. (Tr. 215). On October 7, 2009, Plaintiff presented to Dr. Krishnan's office for a checkup. (Tr. 280). Plaintiff was assessed to have uncontrolled diabetes mellitus and low back pain. (Tr. 280).

Plaintiff included a great deal of medical evidence from years following his date last insured. The Court reviewed all of the medical evidence provided by Plaintiff, however, the Court will include a brief summary of some of the medical evidence for the years after the date last insured of December 31, 2009, as it is relevant to the cause.

Plaintiff was referred by Dr. Krishnan to Dr. Vidya P. Kini a Board Certified Physical Medicine and Rehabilitation, and Board Certified Electrodiagnostic Medicine specialists. (Tr. 240). Plaintiff present to Dr. Kini's office on January 18, 2010, with complaints of back pain. (Tr. 240). Dr. Kini noted that Plaintiff had poor flexibility in forward and lateral flexion of his lumbar spine; and, Plaintiff's paraspinal muscles in the lower thoracic and entire lumbar region were tense and palpable spasms were noted. (Tr. 248). Plaintiff's low back pain was assessed to be secondary to soft tissue dysfunction of the low back, possibly related to facet syndrome and an underlying lumbar spinal posterior column disease. (Tr. 249).  Plaintiff was prescribed an Empi-TENS and Empi Low Back Conductive Garment for his pain. (Tr. 243).

Plaintiff returned to Dr. Kini for a follow-up on March 4, 2010. (Tr. 349). It was noted that the TENS unit helped Plaintiff with his pain. (Tr. 349). However, Plaintiff was still experiencing left leg spasm and only able to sleep 3-4 hours per night. (Tr. 349). Plaintiff was recommended for SI injections, stretching, and continuing to use the TENS unit. (Tr. 351). On April 8, 2010, Plaintiff returned to Dr. Kini for a follow-up with complaints that his left leg spasms wake him at least twice a night; severe pain in left leg making him unable to walk for 4-5 days; and, pain between shoulder blades. (Tr. 346). Plaintiff was prescribed Vicodin for pain and Zanaflex for the muscle spasms. (Tr. 348).

Plaintiff returned for his follow-up on May 13, 2010, with no changes in low back pain and left leg pain. (Tr. 343). It was noted that Zanaflex provided no relief. (Tr. 343). The impression

was noted as lumbar pain, L5 radiculopathy, and SI joint Dysfunction. (Tr. 345). Plaintiff was prescribed Neurontin and advised to continue a home exercise program. (Tr. 345, 339).

Plaintiff followed-up again with Dr. Kini after conducting some labs on June 24, 2010. (Tr. 340). Plaintiff presented with the same complaints. (Tr. 340). Plaintiff was prescribed physical therapy with One on One. (Tr. 342). On July 21, 2010, Plaintiff returned stating that had not attended physical therapy yet due to cost. (Tr. 336). The impression was noted as persistent low back pain and leg cramps. (Tr. 338). Dr. Kini recommended Plaintiff start physical therapy, increase Neurontin and continue with TENS unit. (Tr. 338).

On July 29, 2010, Plaintiff attended physical therapy with Cape Coral Pain and Rehab Center for complaints of low back pain with left lower extremity radiculopathy and spasms in lateral aspect of lower left leg. (Tr. 332, 295–96). The following day Plaintiff returned for a physical therapy session with continued complaints. (Tr. 331). It was noted that Plaintiff continues to have trigger points in bilateral quad, gluts and lateral side of calf area with the left worse than the right. (Tr. 331). On Plaintiff's August 3rd visit, it was noted that the physical therapy had helped to decrease his leg spasm but he continued to have low back pain. (Tr. 330). It was noted that Plaintiff's endurance and tolerance remains limited. (Tr. 330).

On August 5, 2010, Plaintiff returned to Cape Coral Pain stating he was sleeping better, and spasms slowly decreased but with complaints of pain in both hips. (Tr. 329). It was noted that his hip pain decreased from 8/10 to 5/10 post therapy. (Tr. 329). Plaintiff attended physical therapy on August 10th and 12th with similar complaints of low back pain and improvement in hip pain. (Tr. 328, 327). At both sessions Plaintiff explained feeling better immediately after therapy. (Tr. 328, 327).

Plaintiff continued to have hip pain for the following two sessions dated August 17th and 19th. (Tr. 326, 325). On August 24th and 26th, Plaintiff complained of foot pain, and increased pain at left lateral thigh and left SI. (Tr. 324, 323). Plaintiff was noted to have tolerated treatment well on both occasions. (Tr. 324, 323). Plaintiff was noted to be making slow but steady progress through the previous month of sessions. (Tr. 294). On August 31, 2010, Plaintiff returned with increased pain. (Tr. 322). On September 2, Plaintiff complained of continued left hip pain but was able to decrease pain post treatment from 7/10 to 5-6/10. (Tr. 321). Plaintiff continued to report pain on his September 9th, 14th, 17th, and 21st therapy sessions. (Tr. 320, 319, 318, 317). At all these sessions Plaintiff reported some improvement in pain. (Tr. 320, 319, 318, 317).   On September 22, 2010, Plaintiff visited Dr. Krishnan with complaints that his prescription was not helping leg and back pain. (Tr. 270). On September 29th, it was noted that Plaintiff reported being able to do more light chores around the house. (Tr. 293).

At his next three therapy sessions with Cape Coral Pain dated September 23, 28, and October 5th, Plaintiff reported increased pain in his back and hips. (Tr. 316, 315, 313). At Plaintiff's following therapy sessions dated October 7th, 12th, and 14th, Plaintiff reported continued pain in his back and hips but temporarily decreased pain following therapy. (Tr. 312, 311, 310). Plaintiff's pain continued at his October 21 session, but it was noted that his strength, tolerance and endurance were progressing well. (Tr. 309). Plaintiff was unable to attend his next scheduled therapy session because he was having so much pain and didn't sleep at all the night prior. (Tr. 308). After treatment on October 26, 2010, Plaintiff reported feeling good and feeling better at his following appointment on October 28, 2010. (Tr. 308, 307). At the end of the month Plaintiff was noted to have less intermittent pain in his lower back and hip with prolonged standing. (Tr. 292).

At his November 4th and 5th, therapy sessions Plaintiff complained of pain in his hips which decreased post treatment. (Tr. 306, 305). At his following appointment on November 12, his pain level was decreased from 6/10 to 3/10 post therapy. (Tr. 303). At his November 24, 2010, therapy session Plaintiff complained of feeling sore and stiff but was able to decrease his pain from 6/10 to 2-3/10 post treatment. (Tr. 302). On November 26, 2010, Plaintiff expressed feeling a little less pain. (Tr. 301). At the end of the month, Plaintiff was noted to be doing very well with physical therapy. (Tr. 291). Plaintiff tolerated the last four documented physical therapy sessions very well. (Tr. 300, 299, 298, 297). By his December 9th and 10th appointments Plaintiff stated he felt fairly well. (Tr. 298, 297). At his December 16, 2010, Plaintiff was reported to have improved tolerance for standing/exercises from fair to good. (Tr. 353).

Plaintiff returned to Dr. Kini's office on December 23, 2010, with continued complaints of low back pain and left leg numbness and tingling. (Tr. 333). It was noted that Lyrica helped to relieve some numbness and tingling. (Tr. 333). Plaintiff was advised to start Cymbalta, continue physical therapy and medications, continue using TENS unit, and continue with a home exercise program. (Tr. 335).

On January 12, 2011, Dr. Kini was asked to complete a Physical Residual Functional Capacity Questionnaire. (Tr. 355–358). Dr. Kini noted that she sees Plaintiff every 4-6 weeks for low back pain and soft tissue dysfunction with a fair prognosis. (Tr. 355). Dr. Kini noted Plaintiff's pain to be severe and occurring daily—worsening with activity and at night. (Tr. 355). It was also noted that Plaintiff experiences depression and anxiety. (Tr. 356). Dr. Kini also noted that Plaintiff's symptoms are severe enough to frequently interfere with Plaintiff's attention and concentration, and Plaintiff would only be capable of low stress jobs. (Tr. 356). Dr. Kini assessed that Plaintiff could sit for only thirty (30) minutes at one time or about four (4) hours out of an

eight (8) hour day, and stand only thirty (30) minutes at one time or about two (2) hours out of an eight (8) hour day. (Tr. 356). Dr. Kini determined that Plaintiff could carry less than ten (10) pounds frequently, ten (10) pounds occasionally, twenty (20) pounds rarely, and fifty (50) pounds never. (Tr. 357). It was also noted that Plaintiff should never twist, stoop, or crouch; and rarely climb ladders and stairs. (Tr. 358). Plaintiff was assessed to have to miss more than four days per month due to his pain. (Tr. 358).

### D. State Agency Evaluations

On December 3, 2009, State Agency Medical Consultant Nicolas Bancks, M.D., completed a Physical Residual Functional Capacity Assessment for Plaintiff. (Tr. 232–239). Plaintiff's exertional limitations were found to include: occasionally lift twenty (20) pounds, frequently lift ten (10) pounds, stand and/or walk for 6/8 hours, sit for a total of 6/8 hours, and unlimited pushing/pulling. (Tr. 233). Postural limitations included: occasionally climb, balance, stooping, kneel, crouch, and crawl. (Tr. 234). Plaintiff was found to have no established manipulative, visual or communicative limitations. (Tr. 235–36). The only environmental limitation noted for Plaintiff was to avoid concentrated exposure to hazards. (Tr. 236).

On December 3, 2009, Plaintiff underwent a consultative evaluation from Dr. Rajan Sareen. (Tr. 228–29). Dr. Sareen noted that Plaintiff's back pain was chronic and secondary to degenerative disc disease. (Tr. 229). It was noted that Plaintiff's lower back ROM was mildly reduced with increased morning stiffness. (Tr. 229). It was also noted that Plaintiff has intermittent shoulder pain and intermittent pain in the left knee, which is chronic secondary to osteoarthritis and has unremarkable ROM. (Tr. 229). Plaintiff's paresthesia was noted to be secondary to diabetes mellitus II. (Tr. 229).

A second Physical Residual Functional Capacity Assessment was completed on March 13, 2010, by State Agency Medical Consultant P.S. Krishnamurthy, M.D. (Tr. 250–257). Dr. Krishnamurthy found the same exertional, manipulative, visual and communicative limitations as the previous RFC Assessment. (Tr. 251–54). Due to new limitations Plaintiff was found to have the following postural limitations: frequently climbing ramp/stairs and stooping; and occasionally climb ladders/ropes/scaffolds, stoop, kneel, crouch, and crawl. (Tr. 252). Plaintiff was also found to have the following environmental limitations: avoid concentrated exposure of extreme cold, vibration and hazards. (Tr. 254).

### E. Specific Issues

Plaintiff raises three issues on appeal.  As stated by Plaintiff, they are:  (1) the ALJ failed to properly evaluate and weigh the medical source statement of Plaintiff's treating physician, Dr. Kini; (2) the ALJ failed to properly analyze Plaintiff's past relevant work as an "operations manager;" and (3) the ALJ failed to provide a full and fair administrative hearing. (Doc. 16 at 1–2).

### 1.    Consideration of Medical Source Statement by Dr. Kini

Plaintiff argues that the ALJ failed to properly evaluate the medical source statement of Plaintiff's treating physician, Dr. Vidya P. Kini dated January 12, 2011, and failed to provide specific reasons for not according substantial or considerable weight to the medical source statement. (Doc. 16 at 14). Plaintiff asserts that the ALJ's conclusory statement, that Dr. Kini's opinion is "not consistent with the medical evidence or record," is not a sufficient articulation of the specific reasons for not according substantial or considerable weight to a treating physician. (Doc. 16 at 14–16).

In assessing the medical evidence in a case, the ALJ is required to specify the weight given to a treating physician's opinion or state the reasons for giving the opinion no weight. *Belge v.*

*Astrue,* 2010 WL 3824156, at *3 (M.D. Fla. Sept. 27, 2010). Failure to clearly articulate the reasons for giving less or no weight to a treating physician's medical opinion is reversible error. *Lewis v. Callahan,* 125 F. 3d 1436, 1440 (11th Cir. 1997).  In making the determination of the amount of weight to accord a medical source's opinion, the ALJ may consider several factors' including: examining relationship, treatment relationship, nature and extent of treatment relationship, supportability, consistency, specialization and other factors. *See* 20 C.F.R. § 404.1527(c). If an ALJ concludes that a treating physician's medical opinion should be accorded less than substantial or considerable weight, "good cause" must be shown for discounting it. *Lewis v. Callahan*, 125 F. 3d at 1440. "The Eleventh Circuit has concluded that "good cause" exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). If the opinion of a treating physician is given minimal or no weight, the ALJ is required to state with particularity the weight afforded the opinions of non-treating physicians, and failure to do so is reversible error. *Belge*, 2010 WL 3824156, at *3.

In the instant case, the ALJ noted, "the undersigned gives minimal weight to [Dr. Kini's] opinion as it is not consistent with the medical evidence of record. The course of treatment pursued by the doctor has not been consistent with what one would expect if the claimant were truly disabled, as the doctor reported." (Tr. 16). Plaintiff argues this is not sufficient rationale to completely discredit the opinion of a treating physician.

In *Paltan v. Commissioner of Social Security*, 2008 WL 1848342 (M.D. Fla. Apr. 22, 2008), the court found error in the ALJ's failure to provide an explanation as to how the plaintiff's treating physician's opinion was inconsistent with the medical evidence because it rendered review

impossible. In that case, the ALJ "accorded [the treating physician's opinion] 'little weight,' finding that it is 'inconsistent with the medical evidence of record, when considered in its entirety,'" and provided no further explanation. *Id.* at *4. The reviewing court remanded the case for the ALJ to properly address the treating physician's opinion. *Id.* at *8.

Similarly in *Sharfarz v. Bowen*, 825 F. 2d 278 (11th Cir. 1987), the court remanded the case to allow the Secretary to re-evaluate the medical evidence for failing to properly weigh the medical evidence. In *Sharfarz*, the ALJ accorded the plaintiff's treating physicians' opinions minimal weight, although the only evidence supporting a contrary finding to that of the treating physicians were those of two reviewing non-examining, non-treating physicians. *Id.* at 280–81. The court reasoned that the two non-examining physician's opinions did not constitute good cause or substantial evidence to disregard the treating physician's opinions. *Id.* 280–81.

In the instant case, although the ALJ states that Dr. Kini's medical source statement is inconsistent with the medical evidence and that the treatment sought was not consistent with Plaintiff's complaints, the ALJ does not articulate any specific reasons that show how the medical evidence as a whole contradicts the opinion of Dr. Kini. Dr. Kini opined that Plaintiff could sit for thirty (30) minutes at one time for a total of four (4) hours per day and stand for thirty (30) minutes for a total of two (2) hours per day, with the option to stand up and walk around every thirty (30) to forty (40) minutes for eight (8) to ten (10) minutes. (Tr. 356–57). Dr. Kini further indicated that Plaintiff to could lift less than ten (10) pounds frequently, ten (10) pounds occasionally, and twenty (20) pounds rarely. (Tr. 357–58). The doctor also opined that Plaintiff could never twist, bend or crouch, could rarely climb, and would miss work more than four (4) per month due to his condition. (Tr. 358). The ALJ fails to indicate evidence in the record that he found contradicted Dr. Kini's opinion.

The medical evidence as a whole supports Dr. Kini's opinion that Plaintiff's pain would limit him. During the relevant time period, Plaintiff underwent an L4-5 microdiscectomy which resolved some of his leg pain but did not help in his back pain. (Tr. 154–55). Plaintiff was additionally administered multiple injections in his back for the relief of pain, but they did not alleviate any pain. (Tr. 195, 208–09, 224–25, 266). Plaintiff attended physical therapy at multiple facilities where he would have some periods of relief followed by return of the pain or exacerbation of his back pain. (Tr. 149, 173–183, 197–202, 263, 261, 287 etc.). Plaintiff correctly points out that the ALJ seemed to selectively cite to the record where Plaintiff had some relief and seemed to completely ignore any evidence of exacerbation or continued pain. As noted by Plaintiff, the ALJ is not permitted to "'cherry-pick[ ]' records that show good results to the exclusion of evidence reflecting poor results." *Fay v. Astrue*, 2012 WL 4471240 (M.D. Fla. Sept. 27, 2012).

The Commissioner asserts that even if the ALJ failed to properly discount Dr. Kini's opinion, Dr. Kini's opinion is not relevant arguing that Dr. Kini began treating Plaintiff after Plaintiff's date last insured and did not complete a medical source statement until over a year after Plaintiff's date last insured. (Doc. 19 at 5). A plaintiff must show that he was disabled on or before the last date insured. *Mason v. Commissioner of Social Security*, 430 Fed. App'x. 830, 831 (11th Cir. 2011[3]). If a plaintiff shows that he is disabled only after the date last insured, then the claim must be denied despite his disability. *Id*. (Citing *Demandre v. Califano*, 591 F.2d 1099, 1090 (5th Cir. 1979). "When the medical record contained a retrospective diagnosis, that is, a physician's post-insured-date opinion that the claimant suffered a disabling condition prior to the insured date,

---

3 Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 32.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

we affirm only when that opinion was consistent with pre-insured-date medical evidence.  *Id*. at 832 (citations omitted).

In the instant case, Plaintiff's date last insured was December 31, 2009 and Dr. Kini completed the Physical Residual Functional Capacity Questionnaire on January 12, 2011, more than a year after the date last insured.  (See, Tr. p. 358). However, in Dr. Kini's treatment records beginning on January 18, 2010, less than a month after the date last insured, Dr. Kini noted that Plaintiff's low back pain began in 2004, and noted his lumbar spinal surgery in April 2008.  (Tr. p. 248), thereby considering the medical history of Plaintiff prior to the date last insured.  There is clinical and laboratory evidence prior to the date last insured that would support Dr. Kini's medical source statement; including the L4-5 microdiscectomy, and Plaintiff's consistent need for physical therapy among other evidence as set forth above.

Although the ALJ asserted that Dr. Kini's opinion was not consistent with the medical records prior to the date last insured, the ALJ failed to articulate how they were inconsistent. Consequently, the Court finds that the ALJ erred by failing to state with particularity the reasons for discounting Dr. Kini's opinion.  Therefore, the ALJ is required to reexamine and determine the reasons for according the different medical sources their respective weight.

### 2.   Analysis of Past Relevant Work as an "operations manager"

Plaintiff argues that the ALJ's failure to make any factual findings about the mental and physical demands of Plaintiff's past relevant work as an operation manager is reversible error. (Doc. 16 at 20).  The Commissioner argues that the ALJ explicitly found that the Plaintiff's past relevant work is not precluded by Plaintiff's RFC, and therefore no error was made. (Doc. 19 at 9).

According to the regulations, at step four of the sequential evaluation process, the ALJ must determine whether the plaintiff can perform his past relevant work given the assessed RFC. *See* 20 C.F.R. § 404.1520(a)(4)(iv). In making his step four determinations, the ALJ must compare his RFC assessment to the physical and mental demands of the plaintiff's past relevant work. 20 C.F.R. § 404.1560(b). In making his determination of whether the plaintiff can return to his past relevant work, the ALJ is required to make the following findings of fact: "(1) a finding of fact as to the individual's RFC; (2) a finding of fact as to the physical and mental demands of the past job; and (3) a finding of fact that the individual's RFC would permit a return to her past work." *Saunders v. Astrue*, 2008 WL 821939, *9 (M.D. Fla. Mar 26, 2008).

After review of the hearing transcript and the ALJ's opinion, the Court finds that the ALJ did err in his step four determination. In *Saunders v. Astrue*, the Court remanded because the ALJ failed to mention or discuss in his decision the physical and mental demands of the plaintiff's past relevant work. *Saunders v. Astrue*, 2008 WL 821939 at *9. Similarly in the instant case, the ALJ made no mention in the entire opinion of any of the physical and mental demands of Plaintiff's past relevant work as an operation manager. (Tr. 16). Therefore, this Court finds that the ALJ erred in failing to make any factual findings on the physical and mental demands of Plaintiff's past relevant work (as actually or generally performed).

### 3. Whether the administrative hearing was full and fair

Plaintiff argues that the ALJ failed to provide a full and fair administrative hearing because the hearing was only eight (8) minutes long and the record was not fully and fairly developed. (Doc. 16 at 21). Further, Plaintiff argues that, although the brevity of the hearing is not in it of itself a failure to fully and fairly develop the record, the fact that "the ALJ did not ask [Plaintiff] a single question at the hearing, and failed to inquire about the mental and physical demands of the

[Plaintiff's] past relevant work as an 'operations manager' or to inquire whether [Plaintiff] had the functional capacity to satisfy such demands," was reversible error. (Doc. 16 at 21–22). The Commissioner argues that Plaintiff was represented and questioned by his attorney regarding his symptoms and impairments at a hearing, and therefore the record was properly and adequately developed. (Doc. 19 at 9). Further the Commissioner argues that Plaintiff has failed to show any prejudice to Plaintiff for failure to obtain all of the relevant evidence that would require remand. (Doc. 19 at 10).

A hearing before an ALJ is not an adversarial proceeding and the ALJ has a duty to fully and fairly develop the record. *Coven v. Commissioner of Social Security*, 384 Fed. App'x. 949, 951 (11th Cir. 2010).  In order for failure to develop the record to constitute reversible error, the plaintiff must make a showing of prejudice. *Id.* To establish prejudice the plaintiff must at least show "that the ALJ did not have all of the relevant evidence before him in the record (which would include relevant testimony from claimant), or that the ALJ did not consider all of the evidence in the record in reaching his decision." *Kelley v. Heckler*, 761 F. 2d 1538, 1540–41 (11th Cir. 1985).

In the instant case, the ALJ held an eight minute hearing in which he allowed Plaintiff's representative to question Plaintiff, but made no inquiry himself.  The brevity of the hearing, in it of itself, does not constitute failure to provide a fair and full hearing. The Court will not reach the issue of whether the ALJ erred by not conducting a full and fair hearing because the Court determined above that this matter must be remanded for further consideration of the mental and physical demands of Plaintiff's past relevant work. A second hearing is the appropriate forum for such consideration.

**IT IS RESPECTFULLY RECOMMEDED:**

That the decision of the Commissioner be **REVERSED** and the matter be **REMANDED** to the Commissioner of Social Security pursuant to 42 U.S.C. §405(g) in order for the Commissioner to (1) properly weigh the medical evidence from Dr. Kini; (2) fully and fairly develop the record; and (3) set forth factual findings as to the demands of Plaintiff's past relevant work and Plaintiff's ability to perform his past relevant work with his limitations.  If necessary, the Commission may proceed to Step 5 of the sequential evaluation process and obtain the assistance of a vocational expert.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended in Chambers in Ft. Myers, Florida on January 14, 2014, 2013.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE


Copies furnished to:

Counsel of Record
Unrepresented Parties